U.S. District Court
District of Connecticut
FILED AT NEW HAVEN

July 8, 20 24

By S. Santos
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE CELLULAR DEVICE | Case No. 3:24-mj-588 (RMS) |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Anthony Crisera, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of a black cellular telephone in a hard black case, which was seized from Erick Christian LUNA DE LA CRUZ's ("LUNA DE LA CRUZ") person incident to arrest on June 28, 2024, and which is currently in the custody of the FBI in New Haven, Connecticut, as further described in Attachment A (the "**Subject Phone**").

2.  The applied-for warrant would authorize the examination of **the Subject Phone** and the extraction from that property of the electronically stored information described in Attachment B.

3.  For the reasons set forth herein, I have probable cause to believe, and I do believe, that the electronically stored information on **the Subject Phone** contains evidence of violations of Title 18, United States Code, Sections 1029(a)(2), (b)(1), and (b)(2) (Fraud and Related

Activity in Connection with Access Devices and Attempt and Conspiracy)[1] and Title 18, United States Code, Section 1028A (Aggravated Identity Theft) (the "Target Offenses").

4.     I am a Special Agent employed by the Federal Bureau of Investigation ("FBI"). As such, I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Section 2516 of Title 18.

5.     I have been employed by the FBI since January 2021. I am currently assigned to investigate a variety of criminal matters, including financial crimes such as securities fraud, bank fraud, wire fraud, mail fraud, and cyber-enabled fraud. During my training at the FBI Academy in Quantico, Virginia, I received instruction regarding a variety of investigative and legal matters, including the topics of Fourth Amendment searches and seizures, the drafting of search and seizure warrant affidavits, and the principles of probable cause. I am a Certified Public Accountant ("CPA"), and prior to my employment as a Special Agent of the FBI, I was employed as a Senior Audit Associate at a major accounting and auditing firm in Charlotte, North Carolina. As a CPA, I have gained experience in examining finance-related business processes, analyzing financial information, and evaluating business expenditures.

6.     I have participated in this investigation and, as a result of my participation and information received from other law enforcement officers, I am thoroughly familiar with the

---

[1] Section 1029 makes it unlawful to "knowingly and with intent to defraud, traffic in, or use one or more unauthorized access devices during any one-year period, and by such conduct obtain anything of value aggregating $1,000 or more during that period." The term "access device" includes credit cards, *see* 18 U.S.C. § 1029(e)(1), and an "unauthorized access device" is defined as "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud," *id.* § 1029(e)(3).

circumstances of the investigation and the information set forth in this affidavit. The statements contained in this affidavit are based on: (1) my personal participation in the investigation; (2) information provided to me by Special Agents of the FBI and state and local law enforcement officers; and (3) my training and experience. This affidavit is intended to show only that there is sufficient probable cause for the issuance of the requested warrants and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

*Investigation Background*

7.  Since in or around January 2024, the FBI has been investigating LUNA DE LA CRUZ, and others known and unknown, including ANGEL GIANCARLO BELLIDO COSIO ("BELLIDO COSIO") and ANGEL EUGENIO BANCES CHAPONAN ("BANCES CHAPONAN"), for possible violations of the Target Offenses in the District of Connecticut and elsewhere. As discussed below, based on an analysis of the evidence compiled to date, including reviews of police reports, surveillance footage, Avis rental car information, historical cell-site location information obtained from T-Mobile, FedEx shipment information, and physical surveillance observations, the pattern of criminal activity in which LUNA DE LA CRUZ, BELLIDO COSIO, BANCES CHAPONAN, and others have engaged appears to be consistent across a number of incidents in Connecticut and elsewhere across the country. BELLIDO COSIO routinely rented vehicles from Avis using a fraudulent passport in order to travel throughout the United States with BANCES CHAPONAN and, on occasion, LUNA DE LA CRUZ, to engage in ongoing distraction thefts to steal wallets with credit and debit cards from unwitting victims at Trader Joe's grocery stores, T.J. Maxx, and

3

other retail stores. Using those stolen access devices, I believe that BELLIDO COSIO, BANCES CHAPONAN, and, on occasion, LUNA DE LA CRUZ, purchased electronic devices and other items, some of which they subsequently shipped via FedEx to BELLIDO COSIO's address in Paterson, New Jersey. The subsequent whereabouts of the merchandise after shipment to this address remains a subject of the investigation.

8. On or about March 13, 2024, BELLIDO COSIO and BANCES CHAPONAN were arrested by the FBI in Milford/Orange, Connecticut, after they committed a distraction theft of a victim's purse, which contained her credit and debit cards, at a T.J. Maxx, and then used one or more of those cards to purchase electronic items at a nearby Costco in Milford, Connecticut. They were subsequently charged by indictment with Access Device Fraud and Aggravated Identity Theft. No. 3:24CR67 (SRU). On June 20, 2024, BANCES CHAPONAN pleaded guilty before Judge Underhill to one count of Aggravated Identity Theft and is now awaiting sentencing. On June 25, 2024, a Grand Jury returned a superseding indictment charging BELLIDO COSIO and LUNA DE LA CRUZ with Conspiracy to Commit Access Device Fraud in violation of Title 18, United States Code, Section 1029, Access Device Fraud in violation of Title 18, United States Code, Section 1029, and Aggravated Identity Theft in violation of Title 18, United States Code, Section 1028A. The superseding indictment alleged that LUNA DE LA CRUZ or his co-conspirators engaged in access device fraud in various states from as early as September 1, 2023, and continuing through at least March 13, 2024. This Court issued an arrest warrant for LUNA DE LA CRUZ's arrest.

*January 2024 Interstate Travel, Thefts, and Fraud*

9. According to Avis, on or about January 10, 2024, a black 2023 Toyota RAV4 bearing Missouri license plate RH2R8R ("RAV4") was rented from the company using a Peruvian passport under the name of Jesus Antonio Requejo Paquirachi but used by BELLIDO COSIO.

10. On or about January 12, 2024, a victim reported to police in Cary, North Carolina, the possible theft of the victim's wallet while shopping at Trader Joe's. The victim's credit cards were subsequently used to purchase or attempt to purchase multiple Apple devices at a BJ's Wholesale Club in Cary, North Carolina, and Costco in Apex, North Carolina. Additionally, multiple packages of menopause relief medicine were purchased at BJ's Wholesale Club using the victim's credit card.

11. According to historical cell-site location information obtained from T-Mobile pursuant to Virginia state search warrants, telephones utilized by BANCES CHAPONAN and BELLIDO COSIO were located in Cary, North Carolina on or about January 12, 2024. BELLIDO COSIO's telephone was also located in the area of Apex, North Carolina on or about the same date.

12. On or about January 14, 2024, investigators from the Fairfax County Police Department obtained information from Avis indicating that the RAV4 was located in Spartanburg, South Carolina. Investigators later contacted law enforcement personnel from the Spartanburg County Sheriff's Office and provided them with information about the ongoing investigation and about the RAV4.

13. According to reports received from the Spartanburg County Sheriff's Office

and Spartanburg Police Department, officers subsequently observed two subjects exit the RAV4 and carry a box into a FedEx store. After the subjects returned to the RAV4, officers with the Spartanburg Police Department conducted a motor vehicle stop on the vehicle due to a speeding violation and identified three occupants in the RAV4, including BELLIDO COSIO, BANCES CHAPONAN, and LUNA DE LA CRUZ, who was driving.

14. During the interaction with law enforcement personnel, all three individuals provided identification, including their telephone numbers. LUNA DE LA CRUZ provided officers with a New Jersey driver's license which listed his address as 14 Beech Street, Edison, New Jersey. He also provided (908) 962-2070 as his telephone number.

15. According to historical cell-site location information obtained from T-Mobile pursuant to Virginia state search warrants, BANCES CHAPONAN's telephone and BELLIDO COSIO's telephone were located in the area of Spartanburg, South Carolina on or about January 14, 2024. Additionally, according to call detail records obtained from Verizon, the telephone number that LUNA DE LA CRUZ provided during the traffic stop communicated with a telephone number associated with BELLIDO COSIO on or about January 10, 2024, the day on which the RAV4 was rented.

16. Officers eventually conducted a search of the RAV4 after a narcotics detection K-9 alerted on the vehicle. During the search, officers discovered two backpacks and a cardboard box with multiple tubes of toothpaste. In one of the backpacks, officers located a package of menopause medicine, which is the same type of product that was fraudulently purchased from BJ's Wholesale Club in the theft that occurred approximately two days prior in Cary, North Carolina. In addition, officers located a set of Apple AirPods

Pro in a sealed box, one blue ballcap with lettering on the front, one white and black ballcap, and a Trader Joe's shopping bag. No illegal substances were located during the search of the vehicle.

17. Officers seized the FedEx package that was previously dropped off by the subjects and later obtained a state search warrant for the package in South Carolina on or about January 17, 2024. The search of the FedEx package, which was executed on or about January 18, 2024, revealed that the package contained electronic devices, mostly Apple iPads. The FedEx package was addressed to BELLIDO COSIO at 241 Walnut St, FL 1, Paterson, New Jersey.

18. According to records obtained from FedEx Ground pursuant to subpoena, approximately 53 packages were shipped or delivered to BELLIDO COSIO's Paterson address between approximately February 9, 2022, and approximately January 15, 2024. Additionally, according to the tracking information associated with these shipments, packages were shipped or attempted to be shipped to this address from Durham, North Carolina on or about January 12, 2024, and from Spartanburg, South Carolina on or about January 14, 2024. These dates align with the reported theft in North Carolina on or about January 12, 2024, and the motor vehicle stop in Spartanburg, South Carolina on or about January 14, 2024.

*February 10, 2024 Interstate Travel, Thefts, and Fraud*

19. On or about February 10, 2024, the FBI obtained information from Avis indicating that a vehicle rented with the fraudulent Peruvian passport utilized by BELLIDO COSIO—a GMC Terrain bearing Virginia license plate TSB5567 ("GMC Terrain")—was

7

located at an address in Orange, Connecticut, which, based on open-source research, appeared to be in the vicinity of a Trader Joe's.

20. Based on this information, the FBI conducted physical surveillance in the locations of Trader Joe's in Orange, Connecticut and the nearby Costco in Milford, Connecticut. Investigators later observed individuals entering the GMC Terrain with a brown box in a parking lot of a shopping center near Costco.

21. The FBI subsequently identified a victim whose wallet was believed to have been stolen earlier in the day at the Trader Joe's in Orange, Connecticut. The victim initially believed she left her wallet at home, but while she was driving, she received a fraud alert from USAA regarding a purchase in the amount of approximately $3,235 at Costco in Milford, Connecticut. The victim later discovered that her USAA credit card and M&T Bank debit card had been fraudulently used to conduct purchases at Costco. The victim's M&T Bank debit card was charged for approximately $1,184.13, and a second charge in the amount of around $1,567.20 was attempted but declined. The victim's M&T Bank debit card was also fraudulently charged at BJ's Wholesale Club on the same day for approximately $372.21.

22. Surveillance video from Trader Joe's showed BANCES CHAPONAN and BELLIDO COSIO leaving the Trader Joe's around noon. According to information obtained from the victim and from Costco, from approximately 12:30 p.m. to approximately 12:52 p.m., the victim's USAA credit card and M&T Bank debit card were used to purchase and attempt to purchase Apple products and eyedrops. Surveillance video from Costco showed BANCES CHAPONAN and LUNA DE LA CRUZ in the store purchasing items at or about

the same times.

23.     LUNA DE LA CRUZ was later observed by law enforcement entering the GMC Terrain with a box. The vehicle then traveled on I-95 South in the direction of Stratford, Connecticut, which is where LUNA DE LA CRUZ also used the victim's M&T Bank debit card to purchase an Apple Watch at BJ's Wholesale Club.

24.     During the incident, LUNA DE LA CRUZ or his co-conspirators were observed using their cell phones. For example, at approximately 12:35 p.m., Task Force Officer ("TFO") Decker observed an individual exit the GMC Terrain and begin walking across the parking lot in the direction of Costco. The individual appeared to match the physical appearance of BELLIDO COSIO and appeared to be wearing a grey and black North Face fleece, jeans, a blue baseball hat, and a black surgical mask, which is consistent with the clothing worn by BELLIDO COSIO at Trader Joe's during the time of the reported theft. Based on TFO Decker's observations, the individual appeared to be utilizing his cellular telephone.

25.     At approximately 12:47 p.m., TFO Decker observed a second individual who also appeared to be using his cellular telephone, walking on the sidewalk towards BELLIDO COSIO while carrying a brown cardboard box under his arm. The individual appeared to match the physical appearance of BANCES CHAPONAN and appeared to be wearing a brown winter jacket, a dark-colored baseball hat, and a black surgical mask, which is consistent with the clothing worn by BANCES CHAPONAN at Trader Joe's and Costco. BELLIDO COSIO and BANCES CHAPONAN then appeared to meet at another nearby store and walk across the parking lot towards the GMC Terrain.

26. According to call detail records obtained from Verizon pursuant to subpoena, a telephone number utilized by BELLIDO COSIO communicated with the telephone number belonging to LUNA DE LA CRUZ approximately eight times between around 12:20 p.m. and around 1:21 p.m. on February 10, 2024. Additionally, the telephone number utilized by BELLIDO COSIO communicated with the telephone number associated with LUNA DE LA CRUZ approximately 128 times between around January 27, 2024, and around February 20, 2024.

27. Additionally, based on a review of historical cell-site location information obtained from T-Mobile pursuant to federal search warrants, it appears that phones associated with BANCES CHAPONAN and BELLIDO COSIO were located in the areas of Milford, Connecticut and/or Stratford, Connecticut on or about February 10, 2024.[2]

28. Accordingly, based on historical cell-site location information, call detail records, surveillance observations, and information obtained from the victim, Trader Joe's, Costco, and BJ's Wholesale Club, I believe BELLIDO COSIO, BANCES CHAPONAN, and LUNA DE LA CRUZ were involved in the theft at Trader Joe's and the subsequent purchases with stolen access devices at Costco and BJ's Wholesale Club in Connecticut on or about February 10, 2024, and that they used cellular telephones to coordinate the thefts and later purchases.

---

[2] A federal search warrant was also obtained for historical and prospective cell-site location information related to the telephone number used by LUNA DE LA CRUZ. Verizon has provided data in response to the warrant, and analysis of the data is in process.

*June 28, 2024, Arrest*

29. As noted above, on June 25, 2024, this Court (Hon. Maria E. Garcia) authorized a search warrant for historical and prospective cell-site location information for the telephone number associated with LUNA DE LA CRUZ.

30. On or about June 27, 2024, Verizon began providing prospective cell site information. The telephone associated with LUNA DE LA CRUZ was determined to be in the area of 7 Overbrook Avenue, Edison, New Jersey.

31. On June 28, 2024, LUNA DE LA CRUZ was arrested at 7 Overbrook Avenue pursuant to the arrest warrant issued by this court on June 26, 2024. On the morning of June 28, 2024, FBI Special Agents and Task Force Officers called the telephone number associated with LUNA DE LA CRUZ. An individual answered the telephone and confirmed that his name was "Erick." LUNA DE LA CRUZ subsequently exited the residence with the **Subject Phone** and was taken into custody. The **Subject Phone** was seized from LUNA DE LA CRUZ's person incident to his arrest.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

32. Based on my knowledge, training, and experience, I am aware that a mobile or cellular telephone, commonly referred to as a cell phone, is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These

capabilities include storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

33. Additionally, based on my knowledge, training, and experience and information from other law enforcement sources, including sources with expertise pertaining to the features and functionality of cellular telephones and computers, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. Even if deleted, this information can sometimes be recovered with forensics tools.

34. Based on my knowledge, training, and experience, the fact that BELLIDO COSIO, BANCES CHAPONAN, and LUNA DE LA CRUZ purchased multiple electronic devices, beauty products, and pharmaceutical products using stolen credit cards suggests that they intended to sell these products for a profit rather than retain them for personal use. Indeed, a search warrant at BELLIDO-COSIO's residence (where at least some of the fraudulently obtained property had been sent) did not recover much in the way of fraudulently obtained electronic equipment (though $10,000 in currency was recovered). In my experience, individuals who sell fraudulently obtained products often communicate with potential buyers and co-conspirators via phone, text messages, voice messages, instant messages, and emails to coordinate sales. Further, in my experience, individuals who sell such products often take pictures or videos of the products to advertise or show to potential buyers. Finally, such

individuals may use internet browsers and searches to identify stores as potential targets, to research the products they have obtained, to research websites through which to sell the products they have obtained, or to track packages containing merchandise.

35. The ultimate disposition of the products purchased using stolen credit cards remains a subject of the investigation.

36. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Subject Phone** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Phone** because data on a cell phone can provide evidence of a file that was once stored on the cell phone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

37. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of these warrants does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrants at any time in the day or night.

## CONCLUSION

38. I submit that this affidavit supports probable cause for search warrants authorizing the search of the **Subject Phone** as described in Attachment A, to seek the items

described in Attachment B.

                                      Respectfully submitted,

                                      ANTHONY CRISERA
Digitally signed by ANTHONY CRISERA
Date: 2024.07.08 13:18:32 -04'00'

                                      Anthony Crisera
                                      Special Agent
                                      Federal Bureau of Investigation

Subscribed and sworn to before me by telephone this 8th day of July 2024.

                                      Robert M. Spector
Digitally signed by Robert M. Spector
Date: 2024.07.08 17:41:05 -04'00'

                                      HONORABLE ROBERT M. SPECTOR
                                      UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## Property to Be Searched

**Subject Phone 1**: a black cellular telephone in a hard black case, which was seized from Erick Christian LUNA DE LA CRUZ's person incident to arrest on June 28, 2024, and which is currently in the custody of the FBI in New Haven, Connecticut.

This warrant authorizes the forensic examination of the **Subject Phone** for the purpose of identifying the electronically stored information described in Attachment B.




1

## ATTACHMENT B

### Particular Things to Be Seized

All records and information on the **Subject Phone** that relate to violations of Title 18, United States Code, Sections 1029(a)(2), (b)(1), and (b)(2) (Fraud and Related Activity in Connection with Access Devices and Attempt and Conspiracy) and Title 18, United States Code, Section 1028A (Aggravated Identity Theft), and involve Angel Giancarlo BELLIDO COSIO ("BELLIDO COSIO"), Angel Eugenio BANCES CHAPONAN ("BANCES CHAPONAN"), or Erick Christian LUNA DE LA CRUZ ("LUNA DE LA CRUZ") for the time period of January 1, 2022 through the present, including:

a. Lists of potential target stores, including stores targeted for thefts or stores at which stolen credit cards might be utilized;

b. All records reflecting types, amounts, and prices of electronic devices, beauty products, medications, or other valuable non-perishable items, including but not limited to receipts for purchases;

c. The Telephone number, ESN number, serial number, and SIM card number of the **Subject Phone**;

d. The numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of the **Subject Phone**;

e. Internet browsing history, to include, internet searches in the memory of the **Subject Phone**;

f. Images and videos in the memory of the **Subject Phone**;

g. All records reflecting BANCES CHAPONAN's, BELLIDO COSIO's, or LUNA DE LA CRUZ's schedule or travel, including but not limited to travel receipts, hotel receipts, or travel itineraries;

h. GPS coordinates, waypoints, addresses, and location search parameters associated with GPS navigation software;

i. All bank records, checks, credit card bills, account information, and other financial records;

j. Shipment records, including but not limited to receipts for shipments or purchases at FedEx, United Parcel Service, or the United States Postal Service, including tracking information or searches via web browsers or other shipment tracking applications;

k. Rental vehicle information, including but not limited to rental car agreements or receipts;

l. Records, information, and data identifying victims, customers, associates, and co-conspirators, including but not limited to photographs, contact lists, and personal notes reflecting telephone numbers, email addresses, and phone records.

m. Evidence of user attribution showing who used or owned the **Subject Phone** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

3

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described device may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device(s).

To the extent that the **Subject Phone** contains removable storage media and/or other devices, examination of such removable media and/or devices is specifically authorized for the same evidence as described in this attachment.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.